UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN W. POLHAMUS,

                                        Plaintiff,

v.                                                              5:05-CV-0037
                                                                (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                            OF COUNSEL:

OLINSKY & DIMARTINO, LLP                HOWARD D. OLINSKY, ESQ.
Counsel for Plaintiff
1300 Floyd Avenue
Rome, New York 13440-4600

HON. GLENN T. SUDDABY                   WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
    Northern District of New York
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198


GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral

argument was not heard.  For the reasons discussed below, I recommend that the matter be

remanded to the Commissioner for further proceedings.

I.      BACKGROUND

        A.      Procedural History

        Plaintiff received Social Security Income benefits for approximately five years beginning

in July 1996.  Defendant terminated the benefits and Plaintiff appealed the decision to the

Appeals Council, which denied his request for review on May 24, 2002.  Plaintiff did not seek

judicial review.  (Administrative Transcript ("T")  at 187-188.)

        Plaintiff applied for Supplemental Security Income on July 11, 2002, protectively filed

May 15, 2002, alleging disability since February 1, 1990,  due to "broken back, neck, carpal

tunnel."  (T. at 18, 38.)  The application was denied on September 4, 2002.  (T. at 30-33.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (T. at 34.)  The

hearing was held on November 19, 2003.  (T. at 185-244[1].)  On June 10, 2004, the ALJ issued a

decision finding that Plaintiff was not disabled.  (T. at 14-25.)  The ALJ's decision became the

final decision of the Commissioner when the Appeals Council denied Plaintiff's request for

review on December 22, 2004. (T. at 5-7.)  Plaintiff commenced this action on January 13, 2005.

(Dkt. No. 1.)

        B.      The Contentions

        Plaintiff makes the following claims:

        (1)     The ALJ failed to specify which of Plaintiff's spinal disorders she found severe.

(Dkt. No. 7 at 11-12.)

        (2)     The ALJ erred by finding that Plaintiff's cervical impairment does not meet or

_____

        [1]     The last page of the transcript appears to be missing.

2

equal Listing 1.04.  (Dkt. No. 7 at 12-14.)

  (3)  The ALJ failed to develop the record[2].  (Dkt. No. 7 at 14-16.)

  (4)  The ALJ's assessment of Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence.  (Dkt. No. 7 at 16-17.)

  (5)  The ALJ erred by finding that Plaintiff's subjective complaints of pain were not credible.  (Dkt. No. 7 at 18-19.)

  (6)  The ALJ failed to consult a Vocational Expert ("VE").  (Dkt. No. 7 at 20.)

  Defendant contends that the ALJ's decision is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 10.)

## II.  APPLICABLE LAW

### A.  Standard for Benefits

  To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job

---

[2]  Plaintiff argues that the ALJ failed to develop the record in two ways: (1) by failing to request a consultative intelligence evaluation; and (2) refusing to reopen Plaintiff's earlier application.  I will discuss these two issues separately, in sections V(C) and V(D).

> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2007).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be disabled.
> If the claimant survives the fourth stage, the fifth, and final, step
> requires the SSA to consider so-called "vocational factors" (the
> claimant's age, education, and past work experience), and to
> determine whether the claimant is capable of performing other jobs
> existing in significant numbers in the national economy.  [20
> C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the

plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the

defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs

which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540

U.S. at 25; other citations omitted).

     **B.**    **Scope of Review**

     In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at \*4 (S.D.N.Y. Apr. 15, 2003);

*Serrano v. Barnhart*, 2003 WL 22683342, at \*10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing

court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards

were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817

F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with

sufficient specificity to allow a court to determine whether substantial evidence supports the

decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

     A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258

(2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered

throughout the administrative record. *Serrano*, 2003 WL 22683342, at \*10; *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE PLAINTIFF

Plaintiff was born on June 28, 1963. (T. at 104.)  He completed the eighth grade.  (T. at 54.)  Plaintiff has worked in construction, on the assembly line and as a supervisor at an electronics factory, and as a janitor.  (T. at 205-208.)  He has not worked since being injured in a sledding accident in 1990.  (T. at 209, 212.)  Plaintiff alleges disability due to back pain, neck pain, and carpal tunnel syndrome.  (T. at 38.)

## IV.    THE ALJ'S DECISION

The ALJ found that (1) Plaintiff has not engaged in substantial gainful activity since his alleged onset date; (2) Plaintiff's spinal disorder and vertigo are severe; (3) Plaintiff's impairments do not meet or equal a Listed impairment;  (4) Plaintiff's allegations regarding his limitations are not totally credible; (5) Plaintiff has the RFC to lift/carry ten pounds occasionally and 2-3 pounds frequently, stand/walk two hours in an eight-hour workday, sit six hours in an eight-hour workday, push/pull without limitation but can never climb ladders, ropes or scaffolds or be exposed to hazards and should only occasionally climb ramps or stairs, balance, stoop,

kneel crouch and crawl; (6) Plaintiff has the RFC to perform substantially all of the full range of sedentary work; and (7) Medical-Vocational Rule 201.25, Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of 'not disabled'.   (T. at 24-25.)

## V.      DISCUSSION

### A.      The ALJ Did Not Err at Step Two.

The medical record shows that Plaintiff suffers both lumbar and cervical back pain.  At Step Two of the five-step analysis, the ALJ found that Plaintiff suffers from the severe conditions of "spinal disorder and vertigo." (T. at 18, 24.)   Plaintiff argues that the ALJ erred by failing to specify whether Plaintiff's lumbar condition was severe, whether Plaintiff's cervical condition was severe, or whether both conditions were severe. (Dkt. No. 7 at 11-12.)  Plaintiff's argument is without merit.  The context of the ALJ's decision shows that she found that both Plaintiff's cervical condition and lumbar condition were severe.  (T. at 22, seventh paragraph.)

### B.      The ALJ's Finding That Plaintiff's Impairments Do Not Meet or Equal Listing 1.04 Is Not Supported By Substantial Evidence.

Plaintiff argues that the ALJ erred by finding that his impairments do not meet or equal Listing 1.04.  (Dkt. No. 7 at 12-14.)

A claimant is automatically entitled to benefits if his or her impairment(s) meets criteria set forth in "the Listings".  20 C.F.R. § 404.1520(d) (2007).  The burden is on the plaintiff to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment.  *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998).  In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria.  *Sullivan v.*

*Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d) (2007).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id*.

When evaluating whether a claimant's impairments meet or equal a listing, the ALJ must refer to the specific criteria set forth in the listing.  *See, e.g., Morales v. Barnhart*, 218  F. Supp 2d 450, 459-460 (S.D.N.Y. 2002).  An ALJ must set forth his or her analysis of the listing criteria, like other "crucial factors in any determination ...with sufficient specificity to enable (a reviewing court) to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984).  A reviewing court "cannot make an independent determination as to whether the record supports a finding that Plaintiff meets or equals (a listing).  Instead ... the ALJ needs to articulate his basis for finding that Plaintiff does not meet or equal the criteria" for a particular listing.  *Hendricks v. Commissioner of Social Security*, 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006).

The criteria specified by Listing 1.04A are: a disorder of the spine (herniated nucleus pulposes, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or a vertebral fracture) resulting in compromise of a nerve root with (a) evidence of nerve root compression characterized by neuro-anatomic distribution of pain; (b) limitation of motion of the spine; (c) motor loss (atrophy with associated muscle weakness or muscle weakness); (d) sensory or reflex loss; and (e) positive straight-leg raising test if the lower back is involved. 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 1.04 (2007).

The ALJ found that Plaintiff's spine disorder does not meet or equal Listing 1.04 because

it "is not characterized by neuro-anatomic distribution of pain."  (T. at 19.)  Neuro-anatomic

distribution of pain is a radicular type of pain that follows a particular neuro-anatomical

distribution.  *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1 §1.00(K)(3) (2007).

The record contains mixed reports regarding Plaintiff's experience of radicular pain.

Outpatient Progress Notes from University Hospital dated February 16, 2001, note "(n)o signs of

radiculopathy."  (T. at 95.)  On February 15, 2002, Dahari Brooks, M.D., noted:

> Per Dr. Chu, there is evidence of cervical radiculopathy affecting the
> C-6 nerve root.  His interpretation is that there are fibrillation
> potentials in the lower cervical paraspinal muscles, which is
> consistent with cervical nerve root irritation.  In addition, there are
> fibrillation potentials and positive sharp waves in the deltoid, biceps,
> brachii and pronator teres.  There are chronic neurogenic changes of
> the motor units recorded in the deltoid, biceps, brachii and triceps on
> both sides.  This is all consistent with a C-6 radiculopathy ...At this
> point in time, given his positive MRI findings of a disc herniation as
> well as his clinical symptomatology consistent with a C-6
> radiculopathy as well as a nerve conduction test consistent with a C-6
> radiculopathy, I do believe that surgical intervention for his disc is
> indicated.

 (T. at 102.)  On August 22, 2002, consulting examiner Kalyani Ganesh, M.D. diagnosed

Plaintiff with "C5-C6 disc herniation with radiculopathy."  (T. at 137.)   On November 25, 2002,

treating physician Rina Davis, M.D. noted that "(c)learly, this gentleman's physical exam does

not correspond to a C5-C6 radiculopathy."  (T. at 158.)

By finding that Plaintiff did not experience a neuro-anatomic distribution of pain, the ALJ

implicitly rejected the opinions of Dr. Brooks and Dr. Ganesh and adopted the findings of

University Hospital and Dr. Davis.  The ALJ did not explain the rationale for the weight she gave

these doctors' opinions regarding the neuro-anatomic distribution of pain.  In fact, the weight she

gave these doctors' opinions on this matter directly contradicts the explicit weight she gave their

opinions on other matters.  For instance, when discussing Plaintiff's residual functional capacity,

the ALJ found Dr. Ganesh "more credible" than Dr. Davis.  (T. at 22.)

     The ALJ did not set forth her analysis of the listing criteria with sufficient specificity.

Accordingly, remand is appropriate[3].

### C.     Defendant Did Not Err By Failing to Order A Consultative Intelligence Evaluation.

     Plaintiff argues that the "ALJ should have ordered a consultative intelligence evaluation

... (because) there was sufficient evidence to indicate the existence of cognitive and

psychological disorders, but insufficient evidence of the limitations resulting therefrom."  (Dkt.

No. 7 at 14.)

     The Regulations explicitly place the burden of supplying all relevant medical evidence on

the claimant. 20 C.F.R. §§ 404.1512, 416.912(c) (2007).  Under the Regulations, the Social

Security Administration is required to "consider only impairment(s) which (a claimant) say(s) (he

or she) ha(s) or about which (it) receive(s) evidence."  20 C.F.R. §§ 404.1512(a), 416.912(a)

---

[3]     Defendant argues that remand is not appropriate because "substantial evidence indicated that other criteria of section 1.04 ... were not satisfied."  (Dkt. No. 10 at 12.)  However, there is no way for this Court to determine whether the ALJ's determination regarding the other criteria is supported by substantial evidence because the ALJ's decision does not discuss the other criteria.   Further, there is evidence of each of the other criteria in the record.   Physical therapy records show that Plaintiff's lumbar range of motion was limited.  (T. at 83, 108.)   Dr. Brooks found that Plaintiff had left biceps weakness (T. at 104) and physical therapy records show that Plaintiff had diminished strength.  (T. at 111.)  Dr. Brooks founds that Plaintiff's "(s)ensation to pin prick is slightly diminished in a non-dermatoral pattern" (T. at 103), physical therapy records note that Plaintiff "was noted to have diminshed patellar reflex on the left, compared to the right" (T. at 108) and Dr. Ganesh found "decreased pin prick sensation right wrist and the left wrist" (T. at 137) .  Finally, Plaintiff had positive straight-leg raising tests. (T. at 108, 137).

(2007).  If the record shows that a claimant may suffer from a cognitive or psychological

disorder, the ALJ is required to develop the record regarding that disorder even if the claimant

has not alleged that disorder as the basis of disability.  *Prentice v. Apfel*, 11 F. Supp. 2d 420, 426

(S.D.N.Y. 1998).  The ALJ may develop the record by recontacting the claimant's treating

sources for more information or by ordering a consultative examination.  20 C.F.R. § 416.912(e)-

(f) (2007).

Plaintiff argues that the ALJ should have ordered a consultation because the evidence

showed that Plaintiff (1) never went to high school; (2) had not had vocational training; (3) had

little past work experience; (4) testified to daily activities that showed a restricted level of

functioning; and (5) testified that he could not read or write well.  (Dkt. No. 7 at 15.)  Plaintiff

does not cite any medical evidence in the record before the ALJ suggesting that he suffers from a

cognitive or psychological disorder.  It would have been inappropriate for the ALJ to conclude

from the non-medical evidence cited by the Plaintiff that Plaintiff suffered from a cognitive or

psychological disorder[4].  An ALJ may not substitute her lay opinion for a physician's

conclusions.  *Edwards v. Secretary*, 572 F. Supp. 1235, 1244 (E.D.N.Y. 1983).

The only medical evidence that Plaintiff cites is a medical source statement submitted to

the Appeals Council by Dr. Mohammed Ahmed.  In response to the form's inquiry about the

"nature, frequency and length of contact", Dr. Ahmed wrote "since 7/23/04."  (T. at 178.)  The

medical source statement does not indicate when, how often, or even if Dr. Ahmed ever

---

[4]        I note, for instance, that the context of Plaintiff's testimony regarding his inability
        to write well indicates that his difficulty stems from his physical impairments
        rather than any mental impairment.  (T. at 207.)

11

personally examined Plaintiff.  The record does not contain any treatment notes from Dr. Ahmed.

On the fourth page of the seven-page medical source statement, Dr. Ahmed responded to the

question "Please describe any other limitations ...that would affect your patient's ability to work

at a regular job on a sustained basis" with the one-word answer "depression."  (T. at 181.)  Dr.

Ahmed did not provide any further details.

     Dr. Ahmed's medical source statement did not  trigger Defendant's duty to further

develop the record for two reasons.  First, the Appeals Council is authorized only to consider

evidence that "relates to the period on or before the date of the administrative law judge hearing

decision".  20 C.F.R. § 416.1470(b) (2007).  Nothing in Dr. Ahmed's medical source statement

indicates that Plaintiff suffered from depression on or before the ALJ issued her decision on June

10, 2004.  Second, even if the Appeals Council could have properly considered the medical

source statement, Dr. Ahmed's one-word answer was insufficient to show that Plaintiff suffers

from a cognitive or psychological impairment.  *Yancey v. Apfel,* 145 F.3d 106, 114 (2d Cir. 1998)

(Duty to develop record not triggered where only evidence that claimant suffered from a mental

impairment was claimant's testimony that a doctor told her that her problems were "in her

head"); *Kleiman v. Barnhart*, 2005 WL 820261, No. 03 Civ. 6035 (GWG) (S.D.N.Y. April 8,

2005)(Duty to develop record not triggered because evidence that claimant reported being

depressed and anxious but declined treatment, psychiatrist diagnosed claimant with panic

disorder and claimant took antidepressants  presented "only the barest suggestion" that claimant

suffered from a mental impairment); *cf. Prentice*, 11 F. Supp. 2d at 423-424 (Duty to develop

record triggered where record before ALJ contained evidence that claimant's treating physician

prescribed antidepressants, that another treating physician diagnosed claimant with depression

and prescribed medication, and that a mental residual functional capacity form completed by an agency consultant diagnosed claimant with reactive depression); *Gray v. Astrue*, 2007 WL 2874049, No. 04 Civ. 3736 (KMW)(JCF) (S.D.N.Y. Oct. 3, 2007)(Duty to develop record triggered where claimant testified before ALJ that she had been prescribed medication for stress and had a psychiatric appointment the day before the hearing and post-hearing letter and treatment notes from psychiatrist diagnosed claimant with major depressive disorder); *Rodriguez v. Barnhart*, 2006 WL 988201, No. 05 Civ. 3383 (SAS) (S.D.N.Y. April 13, 2006) (Duty to develop record triggered where medical evidence showed that claimant had been prescribed antidepressants, psychiatric clinic evaluation indicated claimant was depressed, tearful, worried, and suffered from sleep disturbance, and claimant testified to excessive sleeping).

Moreover, in the majority of the cases cited above, the claimant was not represented by an attorney at the hearing before the ALJ. Where a claimant appears at the hearing *pro se*, the ALJ is under a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990). Here, Plaintiff was represented by counsel. (T. at 185.) The ALJ and Appeals Council were thus not under a heightened duty. Accordingly, Defendant did not err by failing to order a consultative intelligence evaluation.

> **D.     This Court Lacks Jurisdiction to Review the ALJ's Decision Not to Reopen Plaintiff's Earlier Applications.**

Plaintiff argues that Defendant erred by failing to reopen his prior application. (Dkt. No. 7 at 15-16.) Plaintiff argues that "where the alleged onset date is February 1, 1990, it was error for the ALJ to rely only on the medical records since 2001, particularly where the earlier medical

13

records were available in files pertaining to prior applications, held by the Social Security

Administration."  (Dkt. No. 7 at 16.)

In her decision, the ALJ stated that "(f)iling of the instant application within a year of

ALJ Volhard's decision is taken as an implied request for reopening of that decision, but there

are no grounds for reopening in light of the following decision regarding disability."  (T. at 17.)

This Court lacks jurisdiction to review the ALJ's refusal to reopen the previous decision:

> The Commissioner's decision not to reopen a prior determination is
> not a final decision for the purposes of § 405(g) and thus is generally
> unreviewable even if there was a hearing in the case.  Nevertheless,
> federal courts may review the Commissioner's decision not to reopen
> a disability application in two circumstances: where the
> Commissioner has constructively reopened the case and where the
> claimant has been denied due process.  If the Commissioner reviews
> the entire record and renders a decision on the merits, the earlier
> decision will be deemed to have been reopened, and ...the claim is
> subject to judicial review.  Judicial review is also permissible in rare
> circumstances when the Secretary's denial of a petition to reopen is
> challenged on constitutional grounds ... (I)n the absence of either
> constructive reopening or a constitutional claim, the district court
> lacks jurisdiction to review a decision not to reopen.

*Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) (citations omitted).

Here, the ALJ did not constructively reopen Plaintiff's earlier application.  As Plaintiff

acknowledges, the ALJ did not review the entire record: rather, she relied only on the medical

records since 2001.  Thus,  "nothing in the record indicates that the ALJ's disability

determination was based on anything other than evidence submitted as part of the (current)

application."  *Byam*, 336 F.3d at 181.  Plaintiff has not argued that he was denied due process.

Accordingly, this Court lacks jurisdiction to review Defendant's refusal to reopen Plaintiff's

earlier application.

14

**E.     The ALJ Erred by Failing to Request RFC Assessments From Plaintiff's Treating Physicians.**

Plaintiff argues that the ALJ's RFC analysis is not supported by substantial evidence because she failed to obtain opinions from Plaintiff's treating physicians regarding Plaintiff's limitations[5].  (Dkt. No. 7 at 16-17.)

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments.  20 C.F.R. § 404.1545(a) (2007).  An  RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(Hurd, D.J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a (2007).  Non-exertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a (2007); *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e) (2007).  When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70

---

[5]     Plaintiff also argues that the ALJ's RFC analysis is not supported by substantial evidence because the ALJ "did not assess the limiting (e)ffects of (Plaintiff's) need to use a cane."  (Dkt. No. 7 at 16.)  The ALJ's decision in this regard is supported by substantial evidence.  Plaintiff testified that Eudora Armstrong prescribed the cane (T. at 212-213), but the record does not contain any documents from Dr. Armstrong.  Dr. Ganesh noted that the cane "does not appear to be an absolute necessity".  (T. at 136.)

F. Supp. 2d at 150.  Further, "(t)he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150.

Here, the record contained very few explicit medical opinions regarding Plaintiff's RFC. Consultative examiner Kalyani Ganesh, M.D. opined that Plaintiff had no limitations on sitting, standing, or the use of his upper extremities.  (T. at 137.)  Dr. Ganesh noted a mild to moderate limitation on walking and climbing and a moderate degree of limitation on lifting, carrying, pushing, pulling and bending.  (T. at 138.)

An RFC assessment completed by non-examining consultant K. Stein concluded that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday and push/pull without limitation, but that Plaintiff should only occasionally climb, balance, stoop, kneel, crouch and crawl.  (T. at 140-141.)

Plaintiff's treating physician, Rina Davis, M.D., opined that Plaintiff "is definitely disabled from the type of work that he had done previously, which was construction".  (T. at 156.)  However, Dr. Davis did not explicitly assess Plaintiff's ability to lift, carry, stand, walk, sit, push, pull, climb, balance, stoop, kneel, crouch and crawl.  In fact, one of the reasons the ALJ gave for rejecting Dr. Davis' opinion was that she did "not rate claimant's functional limitations,

16

instead directly addressing the ultimate issue of disability reserved for determination by the Commissioner of Social Security." (T. at 20.)

Finally, although the record contains evidence from another of Plaintiff's treating physicians, Dahari Brooks, M.D., Dr. Brooks did not express an explicit opinion regarding Plaintiff's ability to lift, carry, stand, walk, sit, push, pull, climb, balance, stoop, kneel, crouch and crawl.

The ALJ concluded that Plaintiff has the RFC to lift/carry ten pounds occasionally and two or three pound frequently, stand/walk two hours in an eight-hour workday, sit six hours in an eight-hour workday and push/pull without limitation but that Plaintiff should never climb ladders, ropes or scaffolds and should only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl and should avoid all exposure to hazards. (T. at 22-23.) It is difficult to discern the basis for the ALJ's RFC. It is more restrictive than Dr. Ganesh recommended and less restrictive than the agency consultant recommended.

The Regulations state that:

> (w)hen the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain that information ...(w)e will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available.

20 C.F.R. 416.912(e) (2007). Here, the ALJ found the evidence from Plaintiff's treating physician inadequate because Dr. Davis did not "rate claimant's functional limitations." However, the ALJ did not recontact Dr. Davis to determine whether the additional information

17

was readily available.  Accordingly, remand is appropriate.  *Pabon v. Barnhart*, 273 F. Supp. 2d

506, 516-517 (S.D.N.Y. 2003) (ALJ erred by failing to recontact the plaintiff's treating physician

for an assessment of the plaintiff's residual functional capacity.).

      **F.**      **The ALJ's Credibility Determination Is Not Supported By Substantial Evidence.**

Plaintiff argues that the ALJ improperly rejected his subjective complaints of pain.  (Dkt.

No. 7 at 18-19.)

Plaintiff testified that "I can't even barely stand up ... some days, I can't even get out of

bed."  (T. at 200.)  Plaintiff experiences a sharp, stabbing pain in the lower back and down

through his legs and into his toes.  (T. at 222.)  The pain began when he had his sledding accident

and has continued, increasing over time.  (T. at 222.)  He described the pain in his legs as being

like "an awful bad toothache."  (T. at 223.)  About three and a half years before the hearing he

began to experience neck pain.  (T. at 224.)  The pain is "a crunching, grinding, shooting pain

that goes from my head to my shoulders, into the middle of my back."  (T. at 226.)  The pain

goes down to his fingers.  (T. at 226.)  The pain in his lower back shoots down through his legs.

(T. at 228.)   Plaintiff cannot lift a cup without "sometimes dropping it or real bad shooting pain

through my fingers."  (T. at 229.)  He shakes.  (T. at 229.)

Plaintiff testified that his dizziness began about two and a half years before the hearing.

(T. at 231, 234.)  When it first happened, Plaintiff was bedridden for two or three months.  He

threw up constantly.  "I had nothing but dizziness and blurs for over a year."  (T. at 231.)

The ALJ found that Plaintiff

      is  no  more  than  partially  credible  where  ...  his  complaints  are

> significantly inconsistent with the objective medical evidence.  In
> addition, his activities of daily living are inconsistent with
> incapacitation where he is able to do light housework, shop, travel
> independently, cook simple meals, and socialize.  The claimant's
> earning history of no work since 1988 is insufficient to support an
> inference of disability from the fact of his not working at this time.

(T. at 23.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective

medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must

set forth his or her reasons 'with sufficient specificity to enable us to decide whether the

determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651

(N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5

(S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility

assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. §

404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5

(N.D.N.Y. Mar. 3, 1998) and SSR 96-7p.  First, the ALJ must consider whether there is an

underlying medically determinable physical or mental impairment(s) that could reasonably be

expected to produce the claimant's pain or other symptoms.  SSR 96-7p.  This finding does not

involve a determination as to the intensity, persistence, or functionally limiting effects of the

claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be

expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do

basic work activities.  An individual's statements about his pain are not enough by themselves to

establish the existence of a physical or mental impairment, or to establish that the individual is

disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Id.* When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2007).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Here, although the decision does not state so explicitly, the ALJ found that there was an underlying medically determinable physical impairment that could reasonably be expected to

20

produce Plaintiff's pain and other symptoms.  The ALJ then moved on to the second step, assessing Plaintiff's credibility.  However, the ALJ discussed only Plaintiff's daily activities, which is only one of the symptom-related factors.  Moreover, the ALJ's characterization of Plaintiff as being "able to do light housework, shop, travel independently, cook simple meals, and socialize" is not supported by substantial evidence.

Regarding his activities of daily living, Plaintiff testified that he lives alone.  He is single and does not have any children. (T. at 205.)  Plaintiff has a cat, which he feeds. (T. at 218.)  He lives in a rural one-story trailer. (T. at 216, 229.)  There are three steps up into the trailer. (T. at 230.)

Plaintiff gets up between 4:00 a.m and 5:00 a.m. because he does not sleep well. (T. at 214.)  He eats cereal for breakfast unless he is sick to his stomach due to dizziness. (T. at 214.)  He is able to dress himself.  He showers or bathes every other day. (T. at 217.)  He tries to cook.  If he doesn't cook, his mother "or someone fixes it for me." (T. at 217.)  For lunch he usually eats a sandwich. (T. at 219.)  For snacks he has potato chips. (T. at 219.)  The rest of the day, he lies on the floor or the bed and watches TV. (T. at 220.)  He makes himself a microwaveable dinner or a sandwich for dinner. (T. at 221.)  Plaintiff sister and mother clean his house. (T. at 218.)  Plaintiff washes and dries his clothes, but his mother usually folds them. (T. at 218.)

Plaintiff does not own a car, is not able to drive a car, and does not have a New York State driver's license. (T. at 214-216.)  If he needs to go somewhere his mother, sister or a friend drives him. (T. at 229.)  For instance, Plaintiff's mother takes him shopping once a month. (T. at 217.)

These activities of daily living are not as extensive as the ALJ's decision suggests.  In particular, there is no evidence in the record that Plaintiff can "travel independently".  Moreover, as mentioned above, the ALJ did not discuss any of the other credibility factors.  Accordingly, remand is appropriate.

> **F.      If Further Evidence Obtained From Plaintiff's Treating Physicians Demonstrates That Plaintiff Cannot Perform the Full Range of Sedentary Work or That Plaintiff's Nonexertional Limitations Significantly Diminish His Ability to Work, VE Testimony Will Be Required.**

Plaintiff argues that the ALJ erred by failing to consult a VE.  (Dkt. No. 7 at 20.)

In order to make the determination under the fifth step of the sequential analysis described above, the Commissioner ordinarily uses the Medical Vocational Guidelines, known as the "Grid":

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process . . . , the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2 . . . . The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.  Generally the result listed in the Grid is dispositive on the issue of disability.

*Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (footnotes omitted): *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  The Grid divides work into sedentary, light, medium, heavy and very heavy categories, based on the extent of a

claimant's ability to sit, stand, walk, lift, carry, push, and pull. *Zorilla*, 915 F. Supp at 667 n.2. The Grid yields a decision of "disabled" or "not disabled," taking into account the claimant's RFC, age, education, and prior work experience. 20 C.F.R. § 404.1569 and 20 C.F.R. § 404, Subpt. P, App. 2, § 200.00(c).

Where there are "discrepancies" between the claimant's abilities and the Grid factors, where the claimant's exertional impairments are compounded by significant non-exertional impairments that limit the range of work an individual can perform, or where there is no substantial evidence that a claimant can perform the full range of a particular category of work, then the relevant facts are to be considered in light of the vocational considerations outlined in the Code of Federal Regulations at 20 C.F.R. § 416.969(a). If a claimant cannot perform the full range of an exertional category of work, then an individual assessment may be required. *Zorilla*, 915 F. Supp at 667 (citing *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)).

When "a claimant's nonexertional impairments significantly diminish[6] (his or) her ability to work, the Commissioner should be required to present the testimony of a vocational expert or other evidence concerning the existence of jobs in the national economy for an individual with claimant's limitations." *Dwyer v. Apfel*, 23 F. Supp. 2d 223, 229-230 (N.D.N.Y. 1998).

---

[6]     A claimant's work capacity is "significantly diminished" if there is an additional loss of work capacity that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

The ALJ found that Plaintiff could perform "substantially all of the requirements of sedentary work".  (T. at 24.)  Sedentary work:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a) (2007).  If, on remand after receipt of further information from Plaintiff's treating physicians, Defendant finds again that Plaintiff can perform all of the requirements of sedentary work, VE testimony will not be required.  However, if opinions offered by Plaintiff's treating physicians show that Plaintiff cannot perform the full range of sedentary work or that Plaintiff's nonexertional limitations significantly diminish his ability to work, VE testimony will be required.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[7] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v.*

---

[7]     Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

*Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

FED. R. CIV. P. 72, 6(a), 6(e).


Dated: November 26, 2007
       Syracuse, New York

George H. Lowe
United States Magistrate Judge

25